Thank you. May it please the Court, Sarah Perez on behalf of the petitioner in the case today. I would respectfully like to reserve two minutes for rebuttal. Okay, we'll try to help you, but keep your eye on the clock, okay? Thank you very much. Now in this case, I don't think that anyone is contesting the burden of proof when it comes to admissibility. So once the petitioner's counsel conceded alienage in the case, it became the petitioner's burden to prove by clear and convincing evidence the time, place, and manner of entry. I believe that the issue, however, in this case was the fact that no evidentiary hearing was ever conducted on removability. In a total of eight hearings that were conducted, seven of which were master calendar hearings and one individual hearing, the immigration judge sustained, at the time, the sole charge of removability, which was a 212A6 present without inspection, even though evidence prior to that included the I-213, which was submitted without objection by the government, at which time, prior to entering removal proceedings, the petitioner had admitted that he had come into the United States in a vehicle. Subsequent to that, at the first hearing, the petitioner's counsel admitted the two, the first two, but said that he had issues with regards to the second two charges regarding him being present. Well, with respect, I think you would acknowledge that your client has the burden of establishing by clear and convincing evidence that he entered the United States lawfully. I know you have the testimony about coming in, and I forget what the relationship of the woman was who drove through, and he was in the back seat, but he had prior sworn testimony in an asylum application that he entered the U.S. in both 1989 and 1994 without inspection. Correct. Do you dispute that? Well, I think that there were a couple of problems that occurred during the course of the proceedings, including that. So with regards to that, that was really the only inconsistency that did exist. That's a pretty big inconsistency, isn't it? It is. A sworn testimony that he came in unlawfully twice. Well, it wasn't sworn testimony. It was sworn information that was put on the asylum application. Okay. I'd consider that sworn testimony, but call it what you like. Well, his testimony, which was found credible by the immigration judge and which was consistent throughout all of the proceedings, was that he was waved through and that he came in in a vehicle. And that goes up in two and before this case even came before the immigration judge. So starting with the I-213 and then going through pretty much every hearing, you can see that either through counsel or through the petitioner's own admissions, he states that he came in as a waved through. Now, the only two inconsistencies are those two that say EWE entries. Now, the immigration judge, while the testimony at the merits was being conducted, goes out of her way to make amendments to the application on other issues, but does not make any amendments in that regard. Well, let's assume that you went on that one. What do you do with the CIMT conviction, which is an alternative basis for denial? I don't believe that that conviction should have been upheld, because if he would have been found to have been waved through, we wouldn't be in 212 proceedings. We would have been in 237 proceedings. And the fact that the IJ sustained this so early on in the proceedings, that charge comes in about two hearings later. But with respect, that's a separate and independent reason for removal, is it not? It is, but it's also based on 212. So the government would normally not have lodged that charge had he been in 237 proceedings. So had the immigration judge properly conducted these proceedings and allowed for an evidentiary hearing to actually have been heard. If you look at the dates of the different hearings, it's at the third hearing on July 16, 2012. The IJ states, the Respondent didn't have any more evidence about being admitted, did he? No. All right. I'm going to go ahead and sustain the charge then, since there isn't any other evidence of admission. Before you get there, did your client object to that ground in the hearing? He objected throughout. At almost every hearing, the judge keeps coming back to it and almost forgetfully keeps coming back to the fact that he had contested that. I didn't think he contested his removability on that ground below. Am I mistaken? On the CIMT. On the CIMT, through counsel, they did concede that charge. Okay. So basically, there's nothing to say about that. That's waived, and that's an independent ground for removability, right? It is an independent ground, but it also came subsequent to the fact that the IJ sustained the initial ground. And I don't think that that would have been introduced properly as a 212 charge. It should have been introduced as a 237 charge had the proper evidentiary hearing been conducted. We wouldn't – you don't normally see a 212 charge and a 237 charge. So had the initial element of removal under the 212, I'm entered, I'm here without inspection, that should not have been sustained. Or at the very least, an evidentiary hearing should have been conducted to allow the IJ basically said, based on your testimony, that's not going to be enough. But he was never even given a chance to testify about that. And that becomes sustained. She doesn't even consider the ANTS letter that was submitted. And that ANTS letter was timely submitted prior to the time that she sustained the charge. Let's go to another issue. Let's assume that all these issues are okay on your part. How does the Sanchez family qualify as a particular social group under the statute? Well, family membership could constitute a particular social group. In this case. In this case, I think that the asylum application – there's issues with the asylum application based on the fact that the Respondent was last in – the Petitioner was last in Mexico in 1989. He was a child. The parents had been there. I mean, there were other arguments regarding internal relocation. The importance in this case really had to do with the way that he was charged in proceedings, because at the time he also had four United States citizen children. Two of those children are now over 21. So had the charge been properly sustained, he would be adjustment eligible, even with the conviction that he has. I'll give it. But forgive me. Perhaps I was not clear. Let's put aside for a moment the issues about, you know, the – driving through the border and the CIMT. I'm saying if that were properly before us and you get to the issue of whether or not he qualifies – whether the Sanchez family qualifies as a particular social group. I'm having trouble with that because it wasn't just members of the Sanchez family that were let go by the bank. I mean, that's apparent. Right. But how do they – how does that qualify? Well, I think that counsel at the time was arguing that membership in the family, that the son was sent away from Mexico because of the familial problems that existed at the time. But the father was targeted. And I'm just saying, what problem existed that qualified the family as a particular social group under the statute? Well, the threats were made against the father, and I guess the threats were also directed towards the father and the family. But why? I mean, as you know, to be a particular social group, they've got to be a distinct situation. And several people were laid off by the bank, not just the Sanchez family. So why does that make the Sanchez family a particular social group? I think just based on the fact that the father's role at the bank and what he was being blamed with having done and how that would otherwise have been imputed towards the family. I mean, I think that the problems there go beyond that. I mean, the case – this is the 1989 case. Now we're in 2019. He hasn't been back. There was no evidence of direct past persecution to the son, so the judge would have had to find that that was imputed to him to some extent. There were still family members living in Mexico who come from Mexico. Let me follow up on that. What evidence is there that the petitioner's persecutors attribute any political opinion to him? Well, the argument there that there was an imputed political opinion against the family based on – and if I remember correctly. What is the political opinion? It was an imputed political opinion. What is it? What political opinion do they attribute to him? I believe it was anti-corruption or the way that the judge reframed it. I forget how counsel framed it, but the judge reframed it as anti-corruption at the time. I don't – I think there's a lot of flaws in those arguments with regards to the asylum now just because of the passage of time. Counsel, did anyone in his family suffer any harm in Mexico? The father was threatened. Threatened. Correct. I mean, to the extent that he felt that it was safer for the son to come to the United States. And then we get back to the issue of how he came to the United States. And consistently, I believe even in the father's declaration, he mentions that the aunt was there, she was visiting, and that she brought him back. But none of that was ever considered when it came to – Do you want to save any of your time? I would like to reserve the rest of my time. Thank you very much. You're welcome. So we'll hear from the government. Good morning. May it please the Court. Andrew Nsinga on behalf of the Attorney General. As Judge Smith has pointed out, there was a sworn asylum application, a twice-sworn asylum application that Petitioner entered without inspection. He testified that he entered via this wave-through, and he also had the aunt's statement about the 1989 entry. At the end of the day, evidence must persuade fact-finders. What is the law on the wave-through? I was a little surprised that the government's taking a position that that's not inspection. It sounded as if he was in the front seat and got a good look, then he's been inspected, and if he's in the back seat, he's not. Well, as in many things in immigration law, logic sometimes is a little curious. But at the end of the day, if someone's in a car and simply waved through, that is considered under the law to be an inspection. Now, it is. It is, yes. It is. So there's no dispute about that. Petitioner's opening brief, that's the entirety of their argument to suggest the agency found a wave-through does not equal an inspection. But the agency never found that whatsoever. The immigration judge, as from by the Board, talked about sufficiency of evidence. That's what the agency found. What did they find? I thought they found that he entered without inspection. Wasn't that the ground for the ---- Correct. As a factual matter, as a factual matter, they found that Petitioner didn't demonstrate by clear and convincing evidence that he was indeed waved through, inspected, admitted, whatever term we want to use here. The evidence was not sufficient to meet his burden of proof. And under the ---- There was testimony? It was a twice-sworn asylum application, Your Honor. But whether or not, as Judge Smith points out, we call it testimony or sworn asylum application ---- He said so. In his application? In the application, it twice says ---- I know. It twice says he's an EWI. And we all know an EWI in immigration means entry without inspection. At the end of the day, are we really supposed to say the immigration judge can't rely on a sworn application? Okay. I just want to clarify that the government does not take the position that if you're waved through, you are nevertheless you are not inspected. No. Okay. Correct. The agency since 1980 has said a waved through is an inspection. Okay. But you still have to prove you were indeed inspected. And the record here simply doesn't compel any reasonable fact finder to conclude that he was indeed inspected. What evidence is there that he wasn't? Well, there was the sworn asylum application that he twice entered without inspection. But at the end of the day, Petitioner makes a lot of, hey, tries to make a lot of it. Well, Petitioner was deemed credible. But deemed credible doesn't mean sufficient. These are distinct concepts in immigration law. So at the end of the day, Petitioner still bore the burner proof, even if there was no sworn asylum application that he was an EWI. Even if we were somehow to ignore a sworn application, he would still have to convince the fact finder via testimony. Whether that would have occurred or not, I can't answer because that, again, would have been up to the fact finder. And the fact finder in this case was weighing Petitioner's burden to show by clear and convincing evidence weighed the two asylum, sworn asylum declarations versus the waved through with the, was it an ant or something like that, somebody? Is that correct? Correct, Your Honor. And what about the CIMT issue? Isn't that an independent ground for removal? Petitioner — I'm sorry. Respondent actually agrees with Petitioner that there is some difficulty. Petitioner completely conceded the charge, so there's no error here. But at the end of the day, it would have been a 1227 charge and 71182 charge. Now, Petitioner attempts to — 1227 charge is what? It's a removability versus inadmissibility. The difficulty is Petitioner attempts to blame the immigration judge. Well, there's a clear concession before the immigration judge. So there really is no error here. But at the end of the day, the government agrees that the CIMT would not necessarily be an independent ground of removability under 1182. Whether it would have been under 1227, I can't answer because the agency didn't reach that issue. Because of the concession. So — and part of that difficulty is there's actually discussion on the record where the immigration judge says, well, even if there is an admission, this would just become a 1227 charge because you don't have a visa. So we'd still be here illegally. So at the end of the day, just — You would have had another charge brought? There would have just been another charge. And Petitioner now comes before this Court and sort of complains, well, there's no evidentiary hearing. Sure there was. It was the individual hearing. Petitioner's opening brief never complains that there was no evidentiary hearing. So to raise what seems to be some sort of due process claim is not properly before the Court. To what degree do we need to get into the issue of whether the Sanchez family was a particular social group? Your Honor, it doesn't have to do so at all. I'm sorry? Your Honor, this Court doesn't have to get into that issue whatsoever. As the brief points out, there's a completely independent ground for denial, internal relocation. It was clearly made by the immigration judge. It was made and confirmed by the board. Petitioner's opening brief says nothing about it. Petitioner has glossed over it today by simply saying there was a finding. But the opening brief doesn't disagree with it, and so it's not a basis to overturn the agency. The Court doesn't need to reach any other issue whatsoever. Unless, Your Honor, I'm sorry. I wrote an opinion called N. Singh that came out not too long ago dealing with an Indian relocation from the Punjab and indicated what it is that the IJ and the BIA needed to find in order to show that relocation was appropriate. Was that done in this case? Obviously, they didn't know about the N. Singh case. But was the equivalent of that done in this case? I'm aware of that case, Your Honor. But Petitioner never raised any complaints about the nature of the analysis done. Well, basically, it's a waived issue from your perspective, right? It's unexhausted because it was raised to the agency. It's been abandoned before this Court because no issue whatsoever has been raised. Petitioner could have complained in the opening brief, why I don't like the process. And instead of this case, instead of Narendra Singh being the case, it could have been this case. By not raising it to the agency, by not raising it for the Court, the government has nothing to respond to. I don't have the docket before me. This petition for review was filed in 2014. Correct, Your Honor. Is this what's been going to you? Was this in mediation or what? Petitioner filed a motion to place it in mediation on their prior policies. The government did not agree that because of the two fraud convictions that this was likely to be anything that would fit under that. And so this case was — it wasn't actually referred to mediation, but I think with the extensions — It was a lot of talk about it. Okay. There was some talk about it, Your Honor, but yes. So unless Your Honor has any further questions, we ask the Court to deny the petition. I don't believe so. Thank you very much.  Thank you. So, counsel, you have a little time left for rebuttal. And, Your Honors, I would just like to bring up that the fact that there wasn't the evidentiary hearing conducted on that, whether or not it was particularly briefed or not, I think that the sequence of events is significant. And the fact that the government relies on the fact that the application has the two EWE charges, the judge didn't sustain the charge based on the asylum application. That was sustained prior. That was done actually in July. The asylum application wasn't submitted until October. What's your response to the government's view that even if your client met the burden in the first part of this, that, in fact, relocation is appropriate here, and you never contested that, so it's unexhausted? To the extent of the internal relocation within Mexico? Correct. I'm sorry. Could the Court repeat the question? In other words, there are several ways to address this. If he can be successfully relocated within Mexico under the law, then even if he has certain fears, it doesn't matter because they can be addressed by relocation. The government says that you never responded to that. It was found that you didn't respond to that. Therefore, the issue is unexhausted. Do you agree with that? I don't agree with that. In what way did you respond? I would respond. Not now, but how did you respond in the briefs? How did we respond? I would have to look at the briefs. I'm not sure. I think my time is up, unless there's any other questions. All right. Thanks to both of you. We appreciate it. The case just argued is submitted.
judges: Schroeder, M. Smith, Rayes